In the Matter of the Petition of FRANK JOSEPH KARAS to Be Admitted as a Citizen of the United States of America.

Supreme Court, Oneida County, March 1, 1940.

*Matthew S. Ogonowski*, for the petitioner.

*John L. Murff*, for the United States government.

CROSS, J. The conceded facts are that Frank Joseph Karas filed his petition for naturalization with the clerk of this court November 8, 1939, based upon a declaration of intention filed by him with said clerk November 2, 1936. The applicant stated in his declaration of intention that his lawful entry for permanent residence in the United States was at New York, N. Y., under the name of Frank Karas, May 28, 1906, on the vessel *Kaiser Wilhelm.*

In November, 1938, the applicant, in preparation for final naturalization, filed with the district director of immigration and naturalizazation at Buffalo, N. Y., an application for certificate of arrival and preliminary form for petition for naturalization, in which application the applicant again stated the same facts set forth in his declaration of intention, with regard to the date, place and vessel of his arrival. Investigation instituted by the district director disclosed that the applicant did arrive at New York, but under the name of Franziszek Karas on June 3, 1907, on the steamship *Bluecher.* A certificate showing his arrival and lawful entry for permanent residence on June 3, 1907, was filed with and attached to his petition for final naturalization at the time that was filed on November 8, 1939.

The government contends that applicant's declaration of intention is invalid because his actual date of lawful entry for permanent residence was after June 29, 1906. No certificate showing the date, place and manner of applicant's arrival was either issued or filed with his declaration of intention. This certificate was not filed until more than two and one-half years after the declaration of intention was filed. The government moves for denial of the application and dismissal of the petition upon above grounds.

The question here involved is solely one of statutory construction. The pertinent law is found in the United States Code (tit. 8, § 377b). It reads as follows:

" § 377b. Declaration of intention; prerequisite to validity; establishment of permanent residence and issuance of certificate of arrival. No declaration of intention shall be made by any alien under this chapter, or, if made, be valid, until the lawful entry for permanent residence of such alien shall have been established, and a certificate showing the date, place, and manner of his arrival shall have been issued; except that no such certificate shall be required if the entry was on or before June 29, 1906."

In the government brief the factual background, including administrative experience and statutory development, are set forth. The mischief sought to be avoided and the purpose intended by the enactment of the statute are made clear.

The annual reports of the commissioner of naturalization for several years, prior to the enactment in 1929 of the law here under consideration, reveal that he had sought the enactment of such a statute. The government already had the experience that innumerable aliens had come to the United States in violation of the Immigration Act of 1921, known as the "quota law." Many such aliens declared their intention to become citizens of the United States without lawful right to make such declarations because of their presence in this country in defiance of the immigration laws relating to the quota and immigration-visa requirements. Improper use of such declarations of intention, illegally obtained in the first instance, was not of uncommon occurrence. Such illegally-obtained declaration of intention was used to gain admission to the United States because of the evidence it supplied of former admission and legal residence in this country. Employment was often obtained thereon, thus depriving to that extent the legal citizen by birth or naturalization of his rightful place in the national economy.

The certificate of arrival is the natural starting point for an investigation whether reasons exist for denial of the petition. The instant case affords a strong example of the unnecessary labor, expense and confusion resulting from the construction of the statute sought by the applicant.

The Supreme Court of the United States has held that citizenship is a government gift, which can be obtained only by compliance with the conditions precedent prescribed by Congress. ( *United States* v. *Ginsberg*, 243 U. S. 472.) Said Mr. Justice BRANDEIS, who delivered the opinion of the court in *Tutun* v. *United States* (270 U. S. 568, 578): " In passing upon the application the court exercises judicial judgment. It does not confer or withhold a favor."

Again, the Supreme Court of the United States, in *United States* v. *Ginsberg* (*supra*), set forth the relevant rule of guidance for this court in its approach to judicial construction of such a statute as is here under review. The court said (at p. 474): " An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare."

I am constrained to the conclusion that the certificate of arrival was an indispensable prerequisite to the filing of a valid declaration of intention by the petitioner. That is the purpose and intent of the law.

The application must be denied and petition dismissed.

. Enter order accordingly.